**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ALEKSANDR PIURBEEV**<br>         **Petitioner,**<br><br>      **v.**<br><br>**MICHAEL ROSE, Field Office Director of**<br>**Enforcement and Removal Operations,**<br>**Philadelphia Office, Immigration and**<br>**Customs Enforcement; JAMAL L.**<br>**JAMISON, Warden of Philadelphia**<br>**Federal Detention Center,**<br>         **Respondents** | **CIVIL ACTION**<br><br><br><br>**NO.  26-910** |

## MEMORANDUM

**HODGE, J.**                                                    **February 23, 2026**

Petitioner Aleksandr Piurbeev ("Petitioner" or "Mr. Piurbeev") is yet another of the numerous individuals who have been recently detained by immigration authorities under the new decision by the Bureau of Immigration Appeals ("BIA") to detain those lawfully granted humanitarian parole under 8 U.S.C. § 1182(d)(5) and granted entry in the United States while seeking asylum. BIA's interpretation of the Immigration and Nationality Act ("INA") § 235, 8 U.S.C. § 1225, would permit it to treat an immigrant as "seeking admission" who was not inspected upon arrival in the country even if they arrived in the country years ago. Such treatment results in detention without any hearing. This Court again joins with the hundreds of decisions rejecting BIA's analysis, and grants Mr. Piurbeev's petition for a writ of habeas corpus (ECF No. 1) and orders his immediate release.[1]

---

[1] The Court may decide the issues raised in the Petition without a hearing, as courts have done in similar recent cases. *See Rodriguez Pereira v. O'Neill*, No. 25-cv-6543, 2025 WL 3516665 (E.D. Pa. Dec. 8, 2025); *Gramajo De Leon v. Jamison*, No. 25-cv-7199, 2025 WL 3724604 (E.D. Pa. Dec. 23, 2025).

## I.    BACKGROUND[2]

Mr. Piurbeev is a citizen of Russia. (ECF No. 1 ¶ 17.) On January 2, 2023, Mr. Piurbeev presented himself to the U.S. Customs and Border Protection ("CBP") agency at the Calexico, California port of entry and expressed his intent to seek asylum. (*Id.* ¶ 2.) The CBP granted Mr. Piurbeev parole while he pursued his application for asylum. (*Id.* ¶ 3.) Petitioner's Exhibit B, his I-94, states "Admit Until Date: 01/01/2024." (*Id.*) The Government contends this means his parole expired on that date. (ECF No. 5 at 4.) Mr. Piurbeev asserts, which the Government does not dispute, that he submitted a timely asylum application, attended his immigration court hearings, obtained employment authorization and a social security card, and was otherwise a law-abiding member of society. (ECF No. 1 ¶ 4.)

On February 10, 2026, Mr. Piurbeev was arrested by Immigration and Customers Enforcement ("ICE") while attending his check-in. (*Id.* ¶ 5.) He is detained at the Philadelphia Federal Detention Center. (*Id.* ¶ 10.)

## II.    LEGAL STANDARD

A federal district court is authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where the petitioner is "in custody under or by color of the authority of the United States . . ." The burden is on the petitioner to show that his confinement is unlawful. *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972).

## III.    DISCUSSION

Respondents assert that the Petition should be denied because (1) Mr. Piurbeev is lawfully detained pursuant to 8 U.S.C. § 1225(b)(2)(A); (2) his legal status as an inadmissible arriving alien

---

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

subject to mandatory detention is unchanged by the grant of discretionary parole nor its later expiration; and (3) his detention does not violate constitutional due process.

### A.    Mr. Piurbeev Is Not Subject to Mandatory Detention Under 8 U.S.C. §1225(b)(2)(A)

Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding . . . ." By contrast, 8 U.S.C. § 1226(a) "applies to aliens already present in the United States," *Jennings v. Rodriquez*, 583 U.S. 281, 303 (2018), and provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." The Attorney General "may release" noncitizens on "bond" or "conditional parole," except if they have committed any of the criminal offenses listed in Section 1226(c). 8 U.S.C. § 1226(a).

Reversing course, on July 8, 2025, the Department of Homeland Security ("DHS") issued a policy instructing all ICE employees to consider anyone deemed inadmissible under § 1182(a)(6)(A)(i)—*i.e.,* all those who entered the United States without admission or inspection—to be subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond. This policy was subsequently enshrined in a September 5, 2025 decision by BIA, which took the position that all non-citizens who are present in the United States without admission are subject to mandatory detention under Section 1225(b) and that an immigration judge has no authority to consider their bond requests. *Matter of Yajure Hurtado*, 29 I.&N. Dec. 216 (B.I.A. 2025).

As the Supreme Court has explained, "aliens *already in the country* pending the outcome of removal proceedings" may be detained pursuant to Section 1226(a). *Jennings*, 583 U.S. at 289

(emphasis added). By contrast, Section 1225(b) "applies primarily to aliens seeking entry into the United States." *Id.* at 297. Respondents assert that noncitizens like Petitioner who are already present within the United States are "applicants for admission" within the language of Section 1225(b)(2)(A). (ECF No. 5 at 13.) However, as my colleagues have reasoned, if the Court accepts Respondents' argument that Section 1225(b)(2)(A) applies to all "applicant[s] for admission," then there was no need for Congress to specify that Section 1225(b)(2)(A) would apply to "alien[s] seeking admission." *Demirel v. Fed. Detention Center Phila.*, No. 25-5488, 2025 WL 3218243, at *4 (E.D. Pa. Nov. 18, 2025). This Court must grant "every clause and word of a statute . . . meaning" and render "no clause, sentence, or word . . . superfluous, void, or insignificant." *United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023); *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). If this Court adopted the Government's reading of Section 1225(b)(2)(A) to apply to "all applicant[s] for admission," it would render the phrase "seeking admission" superfluous. However, the text "seeking admission" is not unnecessary and, thus, shall not be ignored by this Court.

Respondents assert that the present case is an "Arriving Alien" case, which they define as "individuals who presented at a port of entry without valid entry documents, were paroled into the country under 8 U.S.C. § 1182(d)(5)(A), and, after a passage of time, recently detained under 8 U.S.C. § 1225(b)(2)(A)." (ECF No. 5 at 2, 4.) While Respondents distinguish this category of cases from "*Hurtado* cases," it notes that both categories share the same authority for mandatory detention under 8 U.S.C. § 1225(b)(2)(A). (*Id.* at 3.) Thus, the Court's statutory analysis above applies in this so-called "Arriving Alien" category of cases.

In addition to their statutory argument, Respondents point to Petitioner's Exhibit A, which is a Notice to Appear charging Petitioner as an "arriving alien" as opposed to "an alien present in

the United States who has not been admitted or paroled." (ECF No. 5 at 7.) This Notice to Appear

is dated January 3, 2023, and the city and state is listed as Calexico, California. (ECF No. 1-3.)

The document is dated prior to the date of entry in his I-94 (ECF No. 1-4). It thus appears that this

document was created one day after Mr. Piurbeev presented himself to the CBP port of entry, and

prior to his discretionary parole under 8 U.S.C. § 1182(d)(5)(A). At the time this Notice to Appear

was created, Petitioner *was* an arriving alien, detained at a CBP port of entry, and would be subject

to mandatory detention under § 1225(b)(2)(A). Petitioner does not dispute that he was subject to

§ 1225(b) mandatory detention at that time. (ECF No. 1 ¶ 2.)

Mr. Piurbeev does not contend that the grant of discretionary parole deemed him admitted.

Rather, he asserts, and the Court agrees, that the grant of discretionary parole and Mr. Piurbeev's

release from the CBP custody in January 2023 makes it so that he is no longer "seeking admission"

within the meaning of § 1225(b). He therefore cannot be detained absent a bond hearing. *See, e.g.*,

*Marcano v. Jamison*, No. 26-cv-239, 2026 WL 196504, at *3 (E.D. Pa. Jan. 26, 2025).[3]

### B.    Mr. Piurbeev's Detention Violates Due Process

The Fifth Amendment's Due Process Clause prevents the Government from depriving any

person of "life, liberty, or property, without due process of law." The "Due Process Clause applies

to all 'persons' within the United States, including [noncitizens], whether their presence here is

lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To

---

[3] Respondents further assert that Mr. Piurbeev's parole was not revoked, but rather terminated automatically, and thus it was not required to provide Mr. Piurbeev with notice of revocation of parole. The Court lacks sufficient evidence to determine whether Mr. Piurbeev's parole terminated automatically. For instance, in *Sadykov v. Rose*, 26-cv-00086 (E.D. Pa.), the petitioner similarly argued his parole was revoked without notice, and his I-94 contained an "Admit Until Date" of December 20, 2023. *See Sadykov*, 26-cv-00086, Dkt. No. 1-1 at 6. The Government's response in that case did not assert that the petitioner's parole was automatically revoked. *See Sadykov*, 26-cv-00086, Dkt. No. 5.

determine whether a government action violates due process, courts apply the balancing test outlined in *Mathews v. Eldridge*, which weighs: (1) the private interest implicated by the government action; (2) the risk of an erroneous deprivation and the probable value of additional safeguards; and (3) the Government's interest, including administrative burdens of additional procedures. 424 U.S. 319, 334 (1976).

All three *Mathews* factors weigh in favor of Mr. Piurbeev. In this instance, he has a strong private interest in his personal liberty. The failure of the Government to afford him *any* individualized determination regarding whether he posed a danger or flight risk poses a high risk of erroneous deprivation of his rights, while a bond hearing imposes minimal administrative burden. Respondents have set forth no facts suggesting he is more of a danger or flight risk now than when he was released by a border patrol official in 2023. To the contrary, since arriving in the United States, Mr. Piurbeev has (1) submitted an application for asylum, (2) has work authorization, a social security number, and no demonstrable criminal record, (3) has attended his immigration court hearings, and (4) voluntarily appeared for a check-in with ICE, all of which indicate the opposite conclusion. Therefore, the application of the *Mathews* factors and constitutional due process necessitated a bond hearing prior to his detention on February 10, 2026. Because that hearing did not occur, he should not be in custody now.

## IV.    CONCLUSION

For the aforementioned reasons, Petitioner's detention without a bond hearing offends the INA and the Due Process Clause of the Fifth Amendment. Moreover, it also offends this Court. Therefore, this Court grants Petitioner's Petition, orders his immediate release, permanently enjoins the Government from re-detaining him under Section 1225(b)(2)(a), and temporarily

enjoins the Government from re-detaining him under Section 1226(a) for seven days following his release. An appropriate Order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**